Murray H. **INGALLS**, Appellant,

v.

Harold **BROWN**, Secretary of the Air
Force, Appellee.

No. 19158.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1966.

Decided Feb. 17, 1967.

Mr. Donald H. Dalton, Washington,
D. C., for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty.,
with whom Mr. David G. Bress, U. S.
Atty., and Mr. Frank Q. Nebeker, Asst.
U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit
Judge, and FAHY and ROBINSON, Circuit
Judges.

PRETTYMAN, Senior Circuit Judge:

Appellant was a regular (as
distinguished from reserve) officer in
the Air Force. He resigned his commission and was given a discharge rated
as "Under Other than Honorable Conditions". He sued to secure either reinstatement or a change in that rating.
We fully recognize that we have no authority to tell the Secretary of the Air
Force what sort of discharge he should
give officers who resign, and we have
no inclination to do so even if we had
the power. But upon the record presented to us in this matter it seems to us

that the Secretary might welcome an opportunity to review this case, perhaps with officials new to the matter and certainly in a fresh light, objectively. Solely for the purpose of permitting this reexamination we remand to the District Court with instructions to issue such an order as will cause the case to come to the Secretary's attention for his consideration and disposition.

We enumerate the factors which brought us to this conclusion:

1. This officer had had fourteen years of service, with forty combat missions in World War II entered on his record. His efficiency ratings were uniformly "outstanding" or "exceptional". In 1959 he was charged with homosexual acts and tendencies. He asked for a psychiatric examination but was given none. As a matter of fact the medical officer who gave the required physical examination was not informed of the homosexual aspects of the matter. The case was simply referred to him for a routine "physical examination upon separation". As a matter of further fact, the medical officer was not one experienced in or practicing the usual phases of medical practice; he was an anesthesiologist. There is a slight element of mystery in this part of the record. The physician's name typed into the medical report was "L. E. Eason", but the name signed to the report was "J. M. Ganey, Jr." Dr. Eason testified that he made the examination; but his name is not signed to the report which appears in this record. It seems to us not improbable that competent medical examiners, made aware of the homosexual complications, would order a thorough psychiatric examination. We assume these complications were of sudden origin, due perhaps to trauma caused by repeated air missions in combat, to some sort of male menopause coincident with this man's age, or perhaps to a variant of a pre-retirement psychiatric syndrome;[1] certainly it seems most unlikely that the

symptoms could have gone unnoticed for many years in the regular service in the Air Force. Thus it appears not impossible that upon reexamination it may be determined that this officer be separated for physical disability.

2. Appellant was not given legal advice to assist him in making his choice between court-martial and resignation or to guide him through the mazes of military procedure. He was given a summary of the charges but no copy of them. The record does not show that the nature of the discharge he would receive upon resignation was discussed with him, although it was disclosed to him in his "Letter of Notification". The provision for the type of discharge was of course in the Air Force Regulations (of which more in a moment), and so the information was available to him. He was given an opportunity to secure counsel, but none was assigned him. The record reflects at this point a man in panic. He made futile efforts in several directions to obtain counsel, obviously tossed about between his desire for assistance and his horror at the charges becoming known to his friends and family, the implacable narrowness of the then-regulations, and the stern requirements of the commanding officers, who gave him 72 hours within which to act. He was advised by a personnel officer, not a lawyer, that in view of the nature of the charges a resignation would be in the best interests of the service and of himself.

3. The Secretary, at the very time of the consideration of this case, changed drastically the Regulations applicable to cases of this nature. The prior regulations had been in effect since 1956.[2] A revised edition was issued March 17, 1959, effective April 14, 1959. This officer's resignation was tendered March 12, 1959, and accepted April 7th or April 9th, effective April 24th. Thus the new regulation had been promulgated but had not become effective when this resigna-

---

1. See McNeil and Giffen, *Military Retirement: The Retirement Syndrome*, 123 AM. J. PSYCHIAT. 848 (1967); see also

Greenberg, *Emotional Illness: A Dilemma of Command, id.* at 844.

2. AFR 35–66.

tion was accepted. The resignation became effective after the new regulation became effective. It was handled by the Air Force under the terms of the old regulations.

In so far as the present case is concerned, the new regulations changed the rules applicable to it in three critical respects. (a) The old regulations provided that a discharge of higher grade than "under other than honorable conditions" would not be granted "even though his military service has been commendable in all other respects." Under the new regulations, according to a "TIG brief" issued by the Adjutant General of the Air Force, "[a]n individual's military record is to weigh heavily in deciding what type of discharge he gets even though an undesirable discharge is being considered. After 14 April, in such a case a general or even an honorable discharge can be awarded where before in most instances the undesirable separation was mandatory." This officer had fourteen years of service, forty combat missions, and uniform ratings of outstanding. It is clear that this record would have been given some effect under the new regulation. Indeed the commanding general called attention to the record and commented on his inability to give it effect under the then-current regulation.

(b) The old regulation merely required that an officer under accusation be notified of his right to counsel and given an "opportunity" to get it. But the new regulation required that an accused be provided counsel and that a letter of notification of charges contain the name and rank of the counsel thus appointed.

(c) Under the old regulation an exception to the normal form of discharge (under other than honorable conditions) was proper "only under unusual extenuating circumstances." The new regulation provided precisely the opposite approach. It said that the normal form would be given "unless the particular circumstances in a given case warrant a General or Honorable Discharge."

Another slight mystery appears at this point in the record. The resignation of this officer, approved by the commander at the Development Center where he was stationed, was referred to an Air Force Personnel Board and, upon its recommendation, was accepted by the Secretary of the Air Force. The actual separation seems to have been effected by an order of the Chief of Staff of the Air Force (Special Orders Number C–216, dated 9 April 1959). That order said: "[The officer] is relieved from assignment Hq AFMDC, ARDC, Holloman AFB, N Mex effective 24 Apr 59, on which date his resignation is accepted by the President under provision of paragraph 7a(3), AFR 36–12 * * *." We do not find in paragraph 7a(3), AFR 36–12, or in any other paragraph of the Air Force Regulations, a reference to acceptance of a resignation by the President. Nor can we ascertain by any other research the procedure or the effect of consideration of such a matter by the President. However the order makes clear that the resignation here involved did not become effective until after the effective date of the new 1959 Regulation. What part the President had in it we do not know.

We do not attempt to deal with the many points, some more or less technical, urged upon us by counsel for appellant; such, for example, as the legally effective date of the resignation in relation to the effective date of the new Regulations; the obligation to appoint counsel; the requirement of the regulations for a psychiatric examination. The case appeals to us as one for reexamination under the less rigid approaches which are reflected in the new Regulations of 1959. The question is not whether this officer is to be separated from the service; the question is simply what type of discharge he should be given. This decision and opinion are not to be regarded as *res judicata* of the entire controversy over this discharge. In other words, appellant is not hereby foreclosed from return to the courts after the proceedings upon the remand have been completed.

Judgment vacated and cause remanded.